# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>v.<br>RAUL ALVARADO,<br>　　　　　Defendant. | Case No.: 3:13-cr-01128-BEN-2<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND REDUCING SENTENCE UNDER THE FIRST STEP ACT, 18 U.S.C. § 3582(c)(1)(A)**<br><br>[ECF Nos. 985, 1063, 1074] |

## I. INTRODUCTION

Before the Court is Juan Alvarado's Motion for Compassionate Release and to Reduce his Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) due to extraordinary and compelling family circumstances. For the reasons discussed below, the motion is granted.

## II. BACKGROUND

At the time of his offense in 2013, Alvarado was described by the case agent as a low-level distributor of methamphetamine caught up in a much larger drug distribution criminal conspiracy. Pre-Sentence Report at 6. Alvarado pleaded guilty to conspiracy to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Due to his past criminal record, which placed him in a Criminal History Category VI, the Government calculated his Sentencing Guideline range as 188 to 235 months. Alvarado was sentenced at the low end of the range to 188 months in

prison with 10 years of Supervised Release to follow. His current expected release date is May 16, 2026.

In 2017, while Alvarado was serving his prison sentence, his mother was diagnosed with end-stage kidney disease, and physicians estimated she had ten years to live. *See* Declaration of Enedina Alvarado, Supp. to Mot. Compass. Rel., Exhibit A, ECF No. 1063-1 at 2-5, ¶ 2. Today, Alvarado's mother is 77 years old and four years older. *Id.* Alvarado's father is 83 years old. *Id.* at ¶ 4. In addition to suffering from kidney disease, his mother suffered a heart attack last year which required the implantation of a pacemaker. *Id.* at ¶ 5. Alvarado's mother also suffers from diabetes and trouble with her vision. *Id.* The kidney disease treatment requires dialysis at home and her husband's assistance. *Id.* at ¶ 2. In fact, her 83-year-old husband, Rogelio, is solely responsible for her daily care. *Id.* at ¶ 5. Unfortunately, her husband (Alvarado's father) is aged and the home dialysis regimen is physically demanding on him and it is realistic to predict that he also will be in need of future assistance. A declaration details the extent of the physical demands on Rogelio in caring for Enedina:

> Large quantities of medication are delivered to my house every month. The dialysis medication arrives in huge, five by five pallets. In total, I get 30 boxes of liquid medicine. My 83 year old husband, Rogelio, is the one who has to unpack all the boxes and stack the medicine in our garage. The medicine comes in five gallon drums and each box contains about thirty-five pounds of liquid dialysis medicine. My husband moves the containers into the house as I need them for the machine, and then disposes of all the liquid waste. It is not an easy job and all of the heavy lifting concerns me. I do not know how much longer Rogelio will be able to do all that he does.
>
> Because of my heart issues, I cannot lift anything above my heart. My husband has to do many of the household chores, he does the heavy cleaning, like mopping. He helps me with the laundry. We do not have a dryer, so we line dry all of our clothes. I can no longer do this, so my husband has to. My house has steps up to the house. There are three steps that I need to walk up when I

come in and down when I leave the house.

*Id.* at ¶¶ 4, 9. Alvarado does have an adult sister. *Id.* at ¶ 14. Both Alvarado and his sister were babies when adopted by Enedina and Rogelio. *Id.* at ¶ 15. However, the sister/daughter is unable to care for their parents because she struggles with substance abuse and addiction. *Id.* at ¶ 14. In essence, then, Alvarado's motion for compassionate release is not based upon his own medical condition but upon the deteriorating medical condition of his aging parents and their need for his daily help.

## III.   LEGAL STANDARD

Generally, a "court may not modify a term of imprisonment once it has been imposed." Title 28 U.S.C. § 3582(c); *see also United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). However, one exception is a case where a motion for compassionate release is filed by a federal inmate. *Id.* at 1281.[1] When reviewing such a motion, courts may consider the factors set forth in 18 U.S.C. § 3553(a)[2] to the extent they are applicable once it finds that "extraordinary and compelling reasons" warrant a reduction. In the future, a motion for compassionate release under § 3582(c)(1)(A) will require consideration of "policy statements issued by the Sentencing Commission." However, today, the Commission's policy statements apply only to motions brought by the Bureau of Prisons. *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) ("There is as of now no 'applicable' policy statement governing compassionate-release

---

[1]   The inmate must first exhaust his administrative remedies by asking the warden to move for his compassionate relief. 28 U.S.C. § 3582(c)(1)(A). He must wait at least 30 days from the receipt of such a request by the warden of the defendant's facility before filing his own motion. *Id.*

[2]   These factors include (1) the "nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the "need for the sentence imposed"; (3) the "kinds of sentences available"; (4) the "kinds of sentences and the sentencing range established"; (5) "pertinent policy statements"; (6) the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) the "need to provide restitution to any victims of the offense."

motions filed by defendants under the recently amended § 3582(c)(1)(A)."). As a result, courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* In other words, a court is vested with the discretion to determine whether extraordinary and compelling reasons exist beyond those specifically delineated in U.S.S.G. §§ 1B1.13 -- which is the policy statement applicable to the Bureau of Prisons. *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 978 (C.D. Cal. 2020) (holding that "the scenarios for compassionate release, reflected in the Sentencing Commission's policy statement codified in U.S.S.G. § 1B1.13, no longer limit the circumstances under which a defendant may seek compassionate release pursuant to Section 3582(c)").

## IV.   DISCUSSION

One category of extraordinary and compelling reasons under the current Bureau of Prisons policy statement is family circumstances. The existing policy statement says that "if the defendant's family circumstances include the 'death or incapacitation of the caregiver of the defendant's minor child or minor children,'" the circumstances are extraordinary and compelling. U.S.S.G. §§ 1B1.13(1)(A), (C). That is not precisely Alvarado's family situation. However, Alvarado's family circumstances are similar in that it is his parents rather than his minor children which need a caregiver, and the family circumstances policy statement helps guide this Court's discretion. Moreover, the existing policy statement has a catchall policy that Alvarado's family circumstances may fall under. The catchall provision provides that if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)," such circumstances also qualify. *See* § 1B1.13(1)(D).

Defendant's family circumstances are extraordinary and compelling. That conclusion, however, does not end the matter. There are other considerations including the 18 U.S.C. § 3553(a) factors. To begin with, early release ought not be granted to one who would still present a danger to the community, or one who has not yet been

significantly punished.  Here, several important considerations augur in favor of Alvarado's early release.  At this time, Alvarado has served more than 100 months in custody; 100 months is a substantial amount of punishment and it is more than 50% of the sentence imposed.  Perhaps just as importantly, during his time in prison, Alvarado has had an exemplary disciplinary record.  During his eight years in prison, Alvarado's only two disciplinary infractions took place in December 2013 (*i.e.,* during the first month of incarceration), and neither involved violence.  *See* Supp. to Mot. Compass. Rel., Exhibit B, ECF No. 1063-1 at 7-10.  Since that early time of adjustment, Alvarado has not received any disciplinary citations.

Just as significant as his years of discipline-free custody time is the fact that Alvarado has seized opportunities to rehabilitate himself by pursuing educational and behavioral classes offered by the Bureau of Prisons.  His attorney details Alvarado's rehabilitation efforts:

> *Mr. Alvarado has done more to rehabilitate himself than any person I have encountered while working in my office's Compassionate Release Unit.*  Mr. Alvarado has earned his G.E.D. and completed a United States Department of Labor sponsored apprenticeship in heating and air conditioner installation and service.  Not content to rest on his laurels, Mr. Alvarado is approximately 1000 hours in to an 8000-hour plumbing apprenticeship.  In addition, Mr. Alvarado has completed a 14-hour drug program and taken classes on a wide variety of subjects, from Microsoft Office, to public speaking, to automotive repair.
>
> In addition to his vocational training, Mr. Alvarado has taken a wide-variety of self-improvement classes.  Mr. Alvarado has completed the BOP's 14-hour drug program.  He has also taken courses in public speaking and parenting, and completed numerous Men of Influence life-skills classes, among many others.  In addition to these courses, Mr. Alvarado has received recognition for volunteer work at a local Children's Hospital, during Christmas time.

*See* Supp. to Mot. Compass. Rel., at 1-2, 5 (emphasis added).  Alvarado states that, if granted compassionate release, he guarantees that he will be a model member of society. Supp. to Mot. Compass. Rel., Exhibit C, ECF No. 1063-1 at 12.  Of course, positive attitude is important, but promises are easy to make.  Weighing heavy in Alvarado's favor is that his positive actions in confinement began long before his current promise of good behavior.

Alvarado's case is similar in many respects to the case of *U.S. v. Rojas*, 17-cr-337-LAB, 2021 WL 4690509 (S.D. Cal. Oct. 7, 2021).  The *Rojas* defendant was granted compassionate release because her aging 78-year old mother was the primary caretaker of Rojas' child.  Both the defendant's mother and the defendant's child had serious medical conditions, which required a great deal of assistance.  *Id.*  The difficult family circumstances were compounded by the declining health of the defendant's mother.  *Id.* While Rojas's own medical conditions were not extraordinary, her family circumstances were judged to be extraordinary and compelling under the catchall provision of the existing Sentencing Guidelines policy statement.  *Id.*  The offense of conviction and sentences in both cases also have similarities.  The *Rojas* defendant was convicted of the same offense as Alvarado, and the defendant in *Rojas* also served a substantial portion of an 80-month sentence.  2021 WL 4690509, at *1.  The *Rojas* case is not an isolated one. In fact, *Rojas* discusses several other decisions finding a prisoner's family circumstances to be the extraordinary and compelling reason for granting compassionate release.  *See id.* at *3.  Those cases are persuasive.

A motion to reduce a sentence and for compassionate release under the First Step Act, § 3582, entails three primary inquiries: "first, whether Defendant has satisfied the administrative exhaustion requirement, [] second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction," and third, the § 3553(a) factors.  *United States v. Galaz*, 477 F. Supp. 3d 1134, 1137 (S.D. Cal. 2020); *see also Keller*, 2021 WL 2695129, at *4-5.  As discussed above, the Court finds that after undertaking these inquiries, they all weigh in favor of granting Alvarado's motion in

order that he may assist his aging parents in their activities of daily living. Additionally, Alvarado has met his burden with respect to providing a release plan, *i.e.*, he will live in his parents' house, and for his own support, he will use his heating and air conditioning installation skills to work in a field where he has an existing job offer.

## V.   ORDER

For the reasons set forth above, IT IS ORDERED that Raul Alvarado be transported from his current place of incarceration to the Southern District of California and thereupon, released from custody. Alvarado shall remain on Supervised Release for a term of ten years commencing on the date of his release, as provided in his original sentence. Alvarado shall report to the United States Probation Department in the Southern District of California within five days of his release.

**IT IS SO ORDERED.**

DATED:   October 29, 2021

**HON. ROGER T. BENITEZ**
United States District Judge